# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL AND KRISTEN BARKER, h/w, et al., | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | NO.  13-5081 |
| WILMER L. HOSTETTER AND JOYCE L. | : | |
| HOSTETTER, et al., | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM

BUCKWALTER, S. J.                                                                April 15, 2014

Currently pending before the Court are (1) the Motion by Defendants Wilmer L. and

Joyce L. Hostetter ("Hostetters") to Dismiss Plaintiffs' First Amended Complaint pursuant to

Federal Rule of Civil Procedure 12(b), and (2) the Motion by Defendants Keystone Custom

Homes, Inc. ("Keystone") and Willow Creek, LLC ("Willow Creek") to Dismiss Plaintiffs' First

Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) and for a

More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e).  For the following

reasons, the Motions are granted in part and denied in part.

## I.      FACTUAL BACKGROUND

According to the Amended Complaint, Plaintiffs are homeowners in the Hopewell Ridge

Planned Community ("Hopewell Ridge"),[1] a twenty-nine lot subdivision located in East

---

[1] Hopewell Ridge is apparently now known as "Wyndham Creek" but will be referred to as
Hopewell Ridge in this Opinion.  (See Am. Compl. ¶ 119.)

Nottingham Township in Chester County, Pennsylvania.[2]  (Am. Compl. ¶¶ 3, 4–26.)  The
Hostetter Defendants were the owners and developers of Hopewell Ridge and acted as Declarant
for the planned community of Hopewell Ridge.  (Id. ¶ 27.)  Defendant Keystone is a
Pennsylvania corporation that entered into an agreement with the Hostetters whereby Keystone
would manage the Hopewell Ridge Homeowner's Association ("HOA") and construct
improvements in Hopewell Ridge.  (Id. ¶¶ 28, 33, 90.)  Defendant Willow Creek is a
Pennsylvania limited liability corporation that sold homes in Hopewell Ridge to third parties,
after the Hostetters conveyed the lots to Willow Creek beginning in March 2007.  (Id. ¶¶ 29, 88.)
Willow Creek's principal place of business is an address used by companies affiliated with
and/or controlled by Keystone Custom Homes, Inc.  (Id. ¶ 29.)  Willow Creek and Keystone
entered into agreements with Plaintiffs for the construction and sale of new homes in Hopewell
Ridge.  (Id. ¶ 96.)

     In 2002, Wilmer Hostetter owned a 65.76 acre parcel of land which he wanted to
subdivide and sell as individual residential building lots.  (Id. ¶ 37.)  The Hostetters hired a firm
to prepare a plan proposing a twenty-nine lot subdivision, where each lot would be
approximately one acre in size and would eventually have a four bedroom home.  (Id. ¶ 38.)  The
plan called for the homes to be serviced by on-lot sewage disposal and on-lot wells.  (Id. ¶ 39.)
The Hostetters prepared a Sewage Planning Narrative, last revised in 2005, stating that all
Hopewell Ridge lots would be serviced by on-lot sewage disposal and private on-lot water wells.
(Id. ¶ 51.)  The Sewage Planning Narrative indicated that twenty of the twenty-nine lots were
unsuited to standard septic systems due to "groundwater nitrogen plume migration off-site" and
that a "workable solution proposes the use of individual on-lot nitrogen control treatment

---

[2] Other than the Meyers Plaintiffs, who purchased their home from an original Hopewell Ridge
purchaser, all Plaintiffs are the original purchasers of their homes in Hopewell Ridge.  (Am.
Compl. ¶¶ 35, 36.)

systems (MicroSepTec EnviroServer wastewater treatment systems) on these 20 lots." (Id. ¶ 52.)
Standard on-lot septic systems could not be used for those twenty lots because a standard system
would increase the elevated nitrate levels in the groundwater. (Id. ¶ 53.) As high levels of
nitrates in drinking water are an environmental hazard and pose health risks to humans, the
United States Environmental Protection Agency regulates maximum levels for nitrates and
nitrate-nitrogen. (Id. ¶¶ 56–60, 61.) The Hostetter Defendants and the Keystone and Willow
Creek Defendants were aware of the high nitrate levels in the groundwater at Hopewell Ridge.
(Id. ¶ 55.)

In 2004, a Preliminary Hydrological Evaluation indicated that having twenty-nine
planned lots, each measuring approximately one acre in size, on the Hostetters' parcel would
result in excess nitrate-nitrogen concentration at the site's downgradient property line unless the
minimum lot size were 2.72 acres or greater. (Id. ¶¶ 38, 40.) The Defendants did not increase
the planned lot size, but instead obtained a permit to use experimental septic systems called
MicroSepTec EnviroServers ("EnviroServers") on the properties in an effort to reduce the
nitrate-nitrogen concentration. (Id. ¶ 41.) These systems were considered experimental because
they had never successfully reduced the nitrate-nitrogen concentration on properties in
Pennsylvania. (Id. ¶ 42.) Around the time that the Preliminary Hydrological Evaluation was
prepared, certain buyers who had each entered into agreements with the Hostetters to purchase
lots and homes in Hopewell Ridge became aware of the problems with the on-lot sewage
systems and water supply for the subdivision. (Id. ¶ 43.) All buyers who were under agreement
at that time terminated their agreements in light of that information. (Id.)

As stated in the Hopewell Ridge Sewage Planning Narrative, the Pennsylvania
Department of Environmental Protection ("DEP") has not approved EnviroServer technology for

nitrogen control, so it required the Defendants to obtain an "experimental Water Quality Management Part II permit."  (Id. ¶¶ 45, 63.)   As a requirement for obtaining that permit, the Defendants identified a contingency plan for sewage and drinking water on the lots if the EnviroServers failed.  (Id. ¶ 45.)  The DEP issued permits for twenty EnviroServer systems in May 2006.  (Id. ¶ 78.)  That permit contained the following conditions:  (1) a conventional back-up contingency plan, as outlined in the permit application, would be implemented if it was determined that the EnviroServers were unable to meet the discharge limits outlined in the permit; and (2) the municipality was to be provided with a bond, escrow account, or bank letter of credit, which would be forfeited to the municipality upon notice by DEP of continuing noncompliance with the permit and used to cover the costs of connecting sewers at Hopewell Ridge to the Oxford Wastewater Treatment Plant.  (Id. ¶ 79.)

In October 2005, the Hostetter Defendants entered into an installation and maintenance agreement for on-lot sewage disposal systems with East Nottingham Township.  (Id. ¶ 64.) Under that agreement, and in order to obtain a sewage septic permit, the Hostetters were required to maintain, repair, and replace the system in perpetuity at their sole cost and expense, in accordance with the regulations of the DEP and the Chester County Health Department.  (Id. ¶ 65.)  That agreement also stated that the Hostetters intended to create the Hopewell Ridge Homeowner's Association ("HOA") to budget for and establish a systems fund for expenses related to the system disposal facilities.  (Id. ¶ 66.)  In November 2005, the DEP approved a revision to the Township Official Sewage Facilities Plan regarding Hopewell Ridge.  (Id. ¶ 69.) In its approval letter, the DEP noted that "[t]he Department considers the EnviroServer to be experimental technology for this use.  Therefore, a conventional backup sewage disposal method is required.  The Department acknowledges that the subdivision will be connected to public

sewage facilities tributary to the Oxford Area Sewer Authority, in the event the experiment is deemed a failure."  (Id. ¶ 70, Ex. C.)

In March 2006, the Hostetters, as Declarant, recorded in the Chester County Recorder of Deeds Office a Declaration of Covenants, Restrictions, Easements, Charges and Liens for Hopewell Ridge, A Planned Community ("the Declaration").  (Id. ¶ 75.)  The Declaration states that the Hopewell Ridge HOA will be responsible for the maintenance, repair, and replacement of small flow sewage treatment and disposal systems and/or lot septic systems in the development.  (Id. ¶ 76.)

On March 26, 2007, the Hopewell Ridge HOA was created with the Pennsylvania Department of State.  (Id. ¶ 77.)  The following individuals associated with Keystone were on the Hopewell Ridge HOA Executive Board: Jeff Rutt, a principal of Keystone; Diane Frame, a Keystone employee; Robert Weaver, Esquire, an attorney with Keystone; Gregory Hill, Keystone's Vice President; and Howard Hirsch, Keystone's Chief Financial Officer.  (Id. ¶¶ 90– 95.)

On March 1, 2007, the Hostetters issued a Public Offering Statement ("POS") for Hopewell Ridge, in which they are identified as the sole Declarants.  (Id. ¶¶ 30, 31, 81.)  The POS states that "The Declarant's primary representative in developing Hopewell Ridge is Wilmer L. Hostetter."  (Id. ¶¶ 31, 81.)  The Purchase Agreement section of the POS provides that the Declarant and Keystone Custom Homes, Inc. will construct and sell the homes within Hopewell Ridge.  (Id. ¶¶ 32, 82.)  In March 2007, the Hostetters began conveying the lots in Hopewell Ridge to Willow Creek.  (Id. ¶ 88.)  The role of Willow Creek as a seller was not mentioned in the POS, but it is the entity listed on Plaintiffs' deeds.  (Id. ¶¶ 33, 89.)

The POS states that Hopewell Ridge would have "small flow sewage treatment and disposal systems, known and sometimes referred to herein as 'enviro server' systems; on-lot septic systems and street lights, all of which are 'controlled facilities.'" (Id. ¶ 83.)  The POS also stated that "[p]ublic water will be available to all lots within the Community."  (Id. ¶ 84.)  The POS further stated that:

> The Declarant initially received an 'experimental' permit for the EnviroServer systems, and a requirement thereunder is that public sewer facilities be available as a backup system.  The Declarant anticipates having the permit designated as a regular permit, as opposed to experimental, in which case public sewer facilities will not be required.  Until such time as the sewer permit is redesignated from experimental to regular public sewer will be available as a backup system to the lots containing EnviroServer systems.  For that reason the Community will be subject to easements in favor of the public authorities and utilities providing water service.  In addition, the Declarant intends to offer to dedicate the water lines themselves to authorities or providers.

(Id. ¶ 85.)  The POS also states that the Declarant warrants that the sanitary sewer facilities and public water lines will be free from structural defects for a period of one year.  (Id. ¶ 86.)  In addition, the POS indicated that "the Declarant has no knowledge regarding whether there are hazardous conditions, including contamination affecting the Community site by hazardous substances, hazardous wastes or the like . . . ."  (Id. ¶ 87.)

As part of the Defendants' efforts to lower the nitrate concentration levels at Hopewell Ridge, a company called Envirotec installed EnviroServer systems on the lots.  (Id. ¶ 97.) Plaintiffs were told prior to closing on their homes that the EnviroServers were "state of the art," "green," and "no-maintenance."  (Id. ¶ 103.)  Plaintiffs were not told that the EnviroServers were installed as part of an attempt to reduce nitrate levels on the properties.  (Id. ¶ 111.)  Before the closings, the Defendants did not advise Plaintiffs that there were excess nitrate-nitrogen

concentrations on the properties.  (Id. ¶¶ 104, 110.)  Plaintiffs were not advised of failure rates or unsatisfactory results associated with the EnviroServer systems prior to closing, or that EnviroServers had not been successful in Pennsylvania.  (Id. ¶¶ 104, 107.)  Plaintiffs were also not advised that the escrow funds held by East Nottingham Township were insufficient to pay for the connections to public water and sewer services should the EnviroServers prove unsuccessful at reducing the nitrate-nitrogen concentrations, nor were they informed that there were no feasible alternatives if the EnviroServers failed to remedy the problem.  (Id. ¶¶ 105–106.)  Many of the Plaintiffs discovered an additional faucet in their kitchen at, or just prior to, their pre-closing walkthroughs, at which time Keystone told them the faucets were a free "upgrade" for filtered water.  (Id. ¶ 108.)  Plaintiffs were not told that those faucets were part of a reverse osmosis system that the Chester County Health Department required because of the elevated nitrate levels in the well water.  (Id. ¶ 109.)

In April 2008, DEP representatives inspected the Hopewell Ridge sewage systems and reported several areas of concern to the Defendants, including erosion problems, unauthorized access to the treatment units, the absence of sampling results from functioning units, and the installation of reverse osmosis units for five houses, which appeared to be unexpected and could negatively impact the treatment process.  (Id. ¶¶ 99, 100.)

On July 23, 2009, DEP notified Wilmer Hostetter that according to sampling data associated with the EnviroServer units at Hopewell Ridge, the EnviroServers were not consistently meeting the effluent limit of total nitrogen as required by the Sewage Permit and that a dispersion plume analysis was necessary to determine the potential for groundwater contamination.  (Id. ¶¶ 101, 114.)  In January 2010, DEP sent the East Nottingham Township solicitor a letter advising that the experimental phase of the Sewage Permit could continue after

modifying the EnviroServers to add alkalinity, a process recommended by the Defendants' consultant, a former DEP official.  (Id. ¶¶ 67, 68, 115, 116.)

On October 10, 2011, four Executive Board members of the Hopewell Ridge HOA conducted a special meeting where the Executive Board accepted declarant control from the Hostetters.  All members of the Executive Board and Officers of the HOA then resigned during the same meeting.  (Id. ¶ 118.)

On February 12, 2012, DEP notified the HOA that the existing septic systems for twenty of the properties were noncompliant, and required the HOA to provide a description of the steps it had taken to implement the backup sewer contingency plan proposed by the Defendants in conjunction with their permit request.  (Id. ¶ 49.)  On February 28, 2012, DEP advised the Hostetters and East Nottingham Township that, in light of the EnviroServers having demonstrated continued noncompliance with the nitrogen limit in the Sewage Permit, public sewers must be extended to serve Hopewell Ridge.[3]  (Id. ¶ 119.)  To date, there is still no connected or readily available public water or sewer system for Hopewell Ridge, and all the Plaintiffs' homes rely on well water.  (Id. ¶¶ 120–122.)  Plaintiffs estimate the cost to connect their homes to public sewers and public water to be in excess of $10,000,000.  (Id. ¶ 123.)  Plaintiffs believe that East Nottingham Township does not hold sufficient escrow to pay for the cost of public sewer access for Hopewell Ridge.  (Id. ¶ 124.)

Plaintiffs initiated the present litigation on November 19, 2013, setting forth nine causes of action: (1) violations of various sections of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701, et seq.; (2) fraud in the inducement; (3) negligent misrepresentation; (4) failure to disclose descriptions of any liens, defects or encumbrances on or affecting title to Hopewell Ridge in violation of the Pennsylvania Uniform Planned Community Act, 68 Pa. Con. Stat. §§

---

[3] By that time, the subdivision was being called "Wyndham Creek."  (Am. Compl. ¶ 119.)

5103, 5402(a)(20), 5402(a)(22), 5402(a)(26), 5402(a)(27), 5402(a)(29), and 5411; (5) breach of fiduciary duty; (6) breach of express warranty; (7) breach of the implied warranties of habitability and workmanship; (8) violations of the Pennsylvania Unfair Trade Practice and Consumer Protection Law, 73 Pa. Con. Stat. §§ 201-2(4)(v), (vii), (xiv), and (xxi); and (9) civil conspiracy.  (Id. ¶¶ 135–195.)  The essence of these claims is that the Defendants withheld material information from the Plaintiffs and misrepresented facts about the sewage system and water supply at Hopewell Ridge.  Such actions, according to Plaintiffs, were intended to induce the Plaintiffs into purchasing lots in Hopewell Ridge because in the Defendants' experience, other buyers who had become aware of the sewage system and water supply problems at Hopewell Ridge terminated their purchase agreements with the Hostetter Defendants.  (Id. ¶¶ 43–44.)  The Keystone and Willow Creek Defendants and the Hostetter Defendants filed Motions to Dismiss on December 3, 2013.  Plaintiffs responded separately to each Motion on December 23, 2013.  These Motions are now ripe for judicial consideration.

## II.     STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555.  Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 679.  "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static.  Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008).  The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations.  Phillips, 515 F.3d at 233.  Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the

court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.    DISCUSSION

The Hostetter Defendants move to dismiss Plaintiffs' Amended Complaint in its entirely due to a lack of foundation under Rule 12(b)(6).  The Keystone and Willow Creek Defendants move to dismiss the Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for lack of foundation under Rule 12(b)(6), and also move for a more definite statement under Rule 12(e).  Having considered the parties' briefs, the Court finds that Plaintiffs have sufficiently stated Interstate Land Sales and Full Disclosure Act claims against all Defendants and will deny the Defendants' Motions to Dismiss the Plaintiffs' federal claims. Accordingly the Keystone and Willow Creek Defendants' Rule 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction is denied.  The Court will exercise its supplemental jurisdiction over the Plaintiffs' state law claims and will consider each claim in turn.

### A.  Plaintiffs' Interstate Land Sales and Full Disclosure Act Claims

The Amended Complaint contains two causes of action under The Interstate Land Sales and Full Disclosure Act ("ILSA").  Plaintiffs allege that all Defendants violated the anti-fraud provisions of ILSA by misrepresenting or omitting material information concerning Plaintiffs' Hopewell Ridge lots, first by failing to disclose that the properties and drinking water had elevated levels of nitrates that were above accepted standards, and second by failing to disclose that the properties were being served by experimental sewage facilities that did not and could not properly function. Plaintiffs further allege that although the sewage facilities serving each property were required by law to be backed up with access to public sewers, public sewers were neither available nor connected and there was no provision made for establishing those

11

connections, including paying for the cost of establishing the connections.  These

misrepresentations and omissions are alleged to be in violation of 15 U.S.C. § 1703(a)(2).

 Plaintiffs also allege that the Keystone and Willow Creek Defendants violated the anti-

fraud provisions of ILSA, first by misrepresenting or omitting material information concerning

Plaintiffs' Hopewell Ridge lots by telling Plaintiffs that reverse osmosis faucets in their kitchens

were free "upgrades" without disclosing the function of the faucets, and second by representing

to Plaintiffs that the septic systems on their lots were "state of the art," "green," and "no-

maintenance" without telling them that the systems were experimental and not performing as

needed.  These misrepresentations and omissions are alleged to be in violation of 15 U.S.C. §

1703(a)(2).  Plaintiffs further allege that the Keystone and Willow Creek Defendants failed to

file a Statement of Record with the Secretary of Housing and Urban Development and failed to

provide Plaintiffs with a Property Record as required by 15 U.S.C. § 1703(a)(1)(A).

 ILSA was enacted as part of the Housing and Urban Development Act of 1968, Pub. L.

No. 90-448, Title XIV, 82 Stat. 476, 590 (1968), and amended in 1979, Pub. L. No. 96-153, Title

IV, 93 Stat. 1101, 1122 (1979).  The ILSA provisions relevant here apply to "subdivision[s]"

which are defined as "any land which is located in any State . . . and is divided or is proposed to

be divided into lots, whether contiguous or not, for the purpose of sale or lease as part of a

common promotional plan."  15 U.S.C. § 1701(3).  A "common promotional plan" is defined as:

> "a plan, undertaken by a single developer or a group of developers
> acting in concert, to offer lots for sale or lease; where such land is
> offered for sale by such a developer or group of developers acting
> in concert, and such land is contiguous or is known, designated, or
> advertised as a common unit or by a common name, such land
> shall be presumed, without regard to the number of lots covered by
> each individual offering, as being offered for sale or lease as part
> of a common promotional plan."

15 U.S.C. § 1701(4).  For purposes of ILSA, a "developer" is "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision."  15 U.S.C. § 1701(5).  An "agent" is "any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision . . . ."  15 U.S.C. § 1701(6).

Unless exempt under the full exemptions discussed below, ILSA's anti-fraud provisions prohibit a developer from "employ[ing] any device, scheme, or artifice to defraud;" "obtain[ing] money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision;" "engag[ing] in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser;" or "represent[ing] that roads, sewers, water, gas, or electric service, or recreational amenities will be provided or completed by the developer without stipulating in the contract of sale or lease that such services or amenities will be provided or completed."  15 U.S.C. § 1703(a)(2)(A)–(D).

Unless exempt, a developer must comply with the following registration and disclosure provisions prior to the sale of a lot covered by ILSA:

> It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails –
> (1) with respect to the sale or lease of any lot not exempt under section 1702 of this title –
> (A) to sell or lease any lot unless a statement of record with respect to such lot is in effect . . . ;

> (B) to sell or lease any lot unless a printed property report . . . has
> been furnished to the purchaser or lessee in advance of the signing
> of any contract or agreement by such purchaser or lessee.

15 U.S.C. § 1703(a)(1)(A)–(B).

If the property report is not delivered before the purchaser signs the purchase agreement, the sale "may be revoked at the option of the purchaser . . . within two years from the date of such signing," and the purchaser will be entitled to a refund of all monies paid by the purchaser under the contract.  15 U.S.C. § 1703(c), (e).  The purchase agreement must include language setting forth the purchaser's revocation right.  15 U.S.C. § 1703(c).

ILSA has two types of exemptions:  full exemptions, described in 15 U.S.C. § 1702(a), which exempt a developer from compliance with any ILSA provisions, and partial exemptions, described in 15 U.S.C. § 1702(b), which under certain circumstances exempt a developer from compliance with ILSA's registration and disclosure requirements, but do not exempt a developer from ILSA's anti-fraud provisions.

There are two exemptions at issue in this case:  (1) section 1702(a)(7), which provides that ILSA will not apply to "the sale or lease of lots to any person who acquires such lots for the purpose of engaging in the business of constructing residential, commercial, or industrial buildings or for the purpose of resale or lease of such lots to persons engaged in such business;" and (2) section 1702(b)(1), which provides that "unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions requiring registration and disclosure (as specified in section 1703(a)(1))" do not apply to "the sale or lease of lots in a subdivision containing fewer than one hundred lots which are not exempt under section (a) of this section."

1.  __The Hostetter Defendants' Motion to Dismiss Plaintiffs' ILSA Fraud Claims__

The Hostetter Defendants put forward two grounds for dismissal of the ILSA claims against them.  First, they claim that they were not "sellers" and do not qualify as "developers" or "agents" under ILSA and thus cannot be held liable for any ILSA violations.  Second, they assert that they fall within one of the full ILSA exemptions and that as a result, they cannot be liable for any ILSA violations.

The Hostetter Defendants first assert that they are not "developers" or "agents" as defined in ILSA because they sold the lots to Keystone and, jointly with Keystone, conveyed the lots to Willow Creek.  The Hostetter Defendants argue that because Plaintiffs were not involved in those transactions, and because the Hostetters are not listed as grantors on the Plaintiffs' deeds, they have not engaged in any conduct that would qualify them as developers or agents for purposes of ILSA and therefore Plaintiffs lack standing to bring ILSA claims against them.

In support of their argument, the Hostetter Defendants rely on the Third Circuit Court of Appeals' definition and discussion of direct and indirect sellers in Bartholomew v. Northampton National Bank of Easton, Easton, Pennsylvania.  584 F.2d 1288 (3d Cir. 1978).  In that case the plaintiffs claimed that individual partners in an entity that committed statutory ILSA violations were indirect sellers because they "'actively participated' in management decisions concerning the development" and that "as 'planners, participants, and profit-makers,' they should be considered indirect sellers and thus 'developers'" who could be individually liable for the partnership entity's violations.  Id. at 1292–93.  The court found that the individual partners were not direct sellers because they did not personally appear on the buyers' deeds.  Id. at 1292.  The court also found that the individual partners were not indirect sellers because they did not sell, offer to sell, or advertise the lots personally or through agents "or other means."  Id. at 1293

(reciting the definition of "developer" found in section 1701(5) of ILSA).  The court determined that "[d]evelopers are those who directly or indirectly engage in selling efforts" and that "only those engaged in the selling effort" are within ILSA's scope.  Id.  The court found no indication "that an indirect seller is other than one who is involved in some manner in the selling efforts related to a land development project."  Id.

Unlike the defendants in Bartholomew, however, the Hostetter Defendants did act as "developers" for purposes of ILSA because they were part of the offer to sell lots through "other means."  Id. at 1293.  The Hostetters are listed as the Declarants in the Public Offering Statement for the Hopewell Ridge lots, which promoted the Hopewell Ridge planned community and stated that either the Declarant or Keystone Homes, Inc. would convey the lot to the purchaser, and that the Declarants would be responsible for conveying the lots.[4]  (Am. Compl., Ex. E at 1, 9.)  The Public Offering Statement explains that the narrative portion of the document is intended to present "information of importance to prospective purchasers," and states that "**[t]he Declarant intends to offer units for sale** before completing construction of all streets and site improvements . . .".  (Am. Compl., Ex. E at 2, 8 (emphasis added).)  The Public Offering Statement also states that "[t]he Declarant's primary representative in **developing** Hopewell Ridge is Wilmer L. Hostetter."  (Am. Compl. ¶ 31, Ex. E at 3) (emphasis added).  Even if the Hostetter Defendants did not directly convey or directly sell Hopewell Ridge lots to Plaintiffs, they are the Declarants in the Public Offering Statement in which Mr. Hostetter is described as

---

[4] The Public Offering Statement includes a notarized signature page bearing the signatures of Wilmer Hostetter and Joyce Hostetter.  (Am. Compl., Ex. E at 24.)  Though they do not explain the presence of what appear to be their notarized signatures, the Hostetter Defendants assert that they were not involved in drafting the Public Offering Statement, did not review it prior to its distribution to Plaintiffs, and were not aware of its existence until after the onset of this litigation. (Hostetter Mem. Supp.  Mot. Dismiss at 3.)  At the motion to dismiss stage, however, the court must base its determination on the facts in the Amended Complaint and postpone consideration of the disputed authorship of the Public Offering Statement.

being involved in developing Hopewell Ridge and where, as Declarants, the Hostetters made an offer to sell lots to prospective purchasers. The Hostetters were therefore "involved in some manner in the selling efforts" for the Hopewell Ridge lots through "other means" in a manner that qualifies them as "developers" under ILSA. See Bartholomew, 584 F.2d at 1293.

In their alternative argument, the Hostetter Defendants claim that they are exempt from ILSA because they sold and conveyed the Hopewell Ridge lots to Keystone and Willow Creek, who in turn conveyed them to Plaintiffs. The Hostetter Defendants argue that their sale of the lots to Keystone exempts them from ILSA under section 1702(a)(7), which provides that ILSA will not apply to "the sale or lease of lots to any person who acquires such lots for the purpose of engaging in the business of constructing residential, commercial, or industrial buildings or for the purpose of resale or lease of such lots to persons engaged in such business."[5]

As discussed above, the representations concerning the Hostetters and their involvement as developers via the Public Offering Statement were made after the lots were initially sold and conveyed from the Hostetters to Keystone and Willow Creek. The POS indicated to Plaintiffs that the lots were being offered for sale by both the Hostetters and Keystone. The Hostetters' sale and conveyance of the lots to Keystone and Willow Creek prior to Willow Creek's sale and conveyance of the lots to Plaintiffs does not negate the Hostetters' status as developers of Hopewell Ridge, as well as their continued involvement in the selling efforts of the Hopewell

---

[5] In support of their argument, the Hostetter Defendants rely on a case from an Ohio state appellate court which found that the party who sold land to a development company was exempt from ILSA under section 1702(a)(7). See Allan v. NVR, Inc., No. Civ.A.12–038, 2012 WL 6738249 (Oh. Ct. App. 2012). Even if the Court found persuasive a state court's interpretation of a federal statute, in a state outside this circuit, regarding the applicability of that exemption to the Hostetter Defendants, the facts of that case are distinguishable from the facts asserted in Plaintiffs' Amended Complaint. In Allan, the court found that the defendant's "only" involvement was dividing and developing the lots before selling them to another developer. Id. at *9. Here, the Hostetters also acted as the Declarant for Hopewell Ridge and made representations to prospective purchasers in the POS.

Ridge lots.  Accordingly, even though the Hostetter Defendants did not directly sell or convey property to Plaintiffs, ILSA's anti-fraud provisions nonetheless apply to them because they acted as "developers" for Hopewell Ridge.

Plaintiffs alleged facts supporting their claim that the Hostetter Defendants, in their role as "developers," made material misrepresentations and omissions concerning the drinking water, sewage facilities, and availability of public sewer access at Plaintiffs' Hopewell Ridge lots in violation of the anti-fraud provisions of ILSA.  Specifically, Plaintiffs alleged that the Hostetter Defendants were aware of problems with elevated nitrate levels on their properties, but omitted that information from the Public Offering Statement and made misrepresentations in the Public Offering Statement regarding the lack of contamination on the property, the nature of the "experimental" sewage facilities on the lots, and the availability of public sewer and water. Those misstatements and omissions are alleged to be in violation of ILSA section 1703(a)(2). Having reviewed the allegations and factual assertions in the Amended Complaint, the Court finds that Plaintiffs have sufficiently stated a claim under ILSA against the Hostetter Defendants.

Having found that the ILSA anti-fraud provisions apply to the Hostetter Defendants and that Plaintiffs have adequately stated a claim against them, the Court will deny the Hostetter Defendants' Motion to Dismiss Plaintiffs' ILSA claim.  The Court will therefore exercise its supplemental jurisdiction over the Plaintiffs' state law claims and will address the Hostetter Defendants' arguments to dismiss the state law claims individually.

## 2. The Keystone and Willow Creek Defendants' Motion to Dismiss Plaintiffs' ILSA Claims

### a. Fraud Claims

Defendants Keystone and Willow Creek first argue that Plaintiffs' allegations of fraud under ILSA fail as a matter of law because Plaintiffs did not allege which Defendants made the

misrepresentations or failed to make disclosures, indicate how those alleged misrepresentations

and omissions fall within the express requirements of prohibited activities under section

1703(a)(2)(A)-(D) of ILSA, provide the dates on which each Plaintiff entered into an agreement

of sale for their lot, or provide the date on which each Plaintiff became aware of a potential issue

with the misrepresentations or omissions, thereby leaving Defendants unable to determine the

timeliness and subsequent viability of the alleged ILSA violations.  The Court will address each

of these arguments in turn.

ILSA section 1703(a)(2) prohibits:  (A) employing any device, scheme, or artifice to

defraud; (B) obtaining money or property by means of any untrue statement of a material fact, or

any omission to state a material fact necessary in order to make the statements made (in light of

the circumstances in which they were made and within the context of the overall offer and sale or

lease) not misleading, with respect to any information pertinent to the lot or subdivision; (C)

engaging in any transaction, practice, or course of business which operates or would operate as a

fraud or deceit upon a purchaser; or (D) representing that roads, sewers, water, gas, or electric

service, or recreational amenities will be provided or completed by the developer without

stipulating in the contract of sale or lease that such services or amenities will be provided or

completed.  15 U.S.C. § 1703(a)(2).

In the Amended Complaint, Plaintiffs set forth five categories of the Defendants' alleged

acts of "misleading or misrepresenting information or omitting material information" in violation

of the anti-fraud section of ILSA:  Defendants' statements and omissions regarding (1) elevated

nitrate levels on the properties; (2) the addition of reverse osmosis faucets to the kitchens and the

reason for their installation; (3) the "experimental" nature of the septic systems which were

described to Plaintiffs as "state of the art" and "green;" (4) the experimental nature of the sewage

facilities and their functionality problems; and (5) the lack of public sewer access at Hopewell

Ridge, even though public sewer backup was required by law, and where Defendants had made

no provisions for establishing or paying for public sewer access.  (Am. Compl. ¶ 139.)

Each alleged ILSA violation is prefaced by an identification of either "all defendants" or

"the Willow Creek and/or Keystone Defendants" as the parties who allegedly made that

particular misleading statement, misrepresentation, or omission.  (Id.)  Those phrases are

sufficient to alert all the Defendants to "the precise misconduct with which they are charged"

because it distinguishes the allegations which are against the Hostetter Defendants as well as the

Keystone and Willow Creek Defendants from those allegations which are only against the

Keystone and Willow Creek Defendants.  See Lum v. Bank of Am., 361 F.3d 217, 223–24 (3d

Cir. 2004) (internal quotations and citations omitted), abrogated in part on other grounds by

Twombly, 550 U.S. at 557.  The Amended Complaint identifies which paragraphs in the Public

Offering Statement allegedly contain fraudulent statements and also identifies the allegedly

fraudulent statements made by the Defendants regarding sewer systems, public water, and the

reverse osmosis faucets installed in the Plaintiffs' kitchens.  It is not fatal to the Plaintiffs' claims

that they do not indicate which individual wrote or uttered each fraudulent statement or

representation—it would be impossible for them "to delineate which Defendant was responsible

for which Act prior to discovery."  See Killian v. McCulloch, 850 F. Supp. 1239, 1254 (E.D. Pa.

1994) (citing Petro-Tech, Inc. v. W. Co. of N. Am., 824 F.2d 1349, 1362 (3d Cir. 1987)).

The Keystone and Willow Creek Defendants next contend that Plaintiffs did not indicate

how the alleged misrepresentations and omissions fall within the express requirements of

prohibited activities under ILSA section 1703(a)(2)(A)–(D).  In Count One of the Amended

Complaint, Plaintiffs assert that "[k]nown environmental contamination to drinking water and/or

the lack of a properly permitted and functioning sewage system serving a residential lot is clearly material to a residential buyer of a property." (Am. Compl. ¶ 138.)  Plaintiffs then set forth the five categories of omissions and misrepresentations regarding that material information described above, and assert that all those misrepresentations and omissions violate ILSA section 1703(a)(2).

Plaintiffs' allegations describe conduct that violates section 1703(a)(2)(A), (B), and (C). Although Plaintiffs have not alleged "how" the sufficiently described fraudulent acts set forth in the Amended Complaint constitute violations of the general anti-fraud section of ILSA, they have alleged fraudulent conduct in violation of that section by defendants who are subject to its provisions.  That Plaintiffs did not specify which subsections of 1703(a)(2) were allegedly violated is not fatal to Plaintiffs' claim because they have alleged that the Defendants made material misstatements and omissions regarding the nitrate levels, reverse osmosis systems, septic systems, the experimental nature of the EnviroServers, and the lack of public sewer and water connections at Hopewell Ridge, all of which violate the provisions of ILSA section 1703(a)(2).  After reviewing the facts and allegations contained in the Amended Complaint, the Court is satisfied that Plaintiffs have sufficiently alleged fraud under ILSA against the Keystone and Willow Creek Defendants.

The Keystone and Willow Creek Defendants next argue that they are unable to determine the timeliness and viability of Plaintiffs' section 1703(a)(2) claims because Plaintiffs have not included in the Amended Complaint the dates on which each Plaintiff entered into an agreement of sale or the date on which each Plaintiff first became aware of a potential issue.  Plaintiffs, however, stated in the Amended Complaint that "[n]one of the Plaintiff homeowners discovered the true extent of the problems with their water and sewage systems until on or after August 30,

2011." (Am. Compl. ¶ 131.)  ILSA contains a general three-year statute of limitations that accrues on the date of the signing of the Agreement of Sale, but also has a three-year statute of limitations for a cause of action arising under three of the anti-fraud provisions at issue here that accrues on the date of the discovery of a violation, or after discovery should have been made by the exercise of reasonable diligence.  See 15 U.S.C. § 1711(a)(1), (a)(2)[6].  Plaintiffs asserted in the Amended Complaint that they discovered the alleged ILSA violations on or after August 30, 2011.  Plaintiffs filed their Amended Complaint on November 19, 2013.  Accepting Plaintiffs' averment that they discovered violations on or after August 30, 2011 as accurate for the purpose of deciding this Motion to Dismiss, Plaintiffs filed this lawsuit within the three-year statute of limitations under the ILSA anti-fraud provisions, thereby making the fraud claims timely.

Therefore, on the basis of the Amended Complaint, the Court finds that Plaintiffs have adequately pled fraud under ILSA section 1703(a)(2) against the Keystone and Willow Creek Defendants, and the Motion to Dismiss that claim is denied.

### b.  ILSA Statutory Claims

The Keystone and Willow Creek Defendants argue that Plaintiffs' claims alleging they violated ILSA by failing to file a Statement of Record with the Secretary of Housing and Urban Development and by failing provide Plaintiffs with printed Property Reports should be dismissed because they are exempt from complying with section 1703(a)(1)(A) and (B) due to the fact that Hopewell Ridge contains fewer than one hundred lots.  Plaintiffs respond by arguing that although Hopewell Ridge has fewer than one hundred lots, Hopewell Ridge and two other nearby Willow Creek developments are part of a common promotional plan as defined by ILSA and the Department of Housing and Urban Development ("HUD") that together have a total

---

[6] 15 U.S.C. § 1711(a)(2) creates a statute of limitations of three years from the date of discovery of a violation of sections 1703(a)(2)(A), (a)(2)(B), or (a)(2)(C), the sections under which Plaintiffs' fraud claims arise.

number of lots greater than one hundred, and that therefore the one hundred lot exemption does

not apply to their purchases from the Defendants.

Under ILSA, a common promotional plan is

> a plan, undertaken by a single developer or a group of developers
> acting in concert, to offer lots for sale or lease; where such land is
> offered for sale by such a developer or group of developers acting
> in concert, and such land is contiguous or is known, designated, or
> advertised as a common unit or by a common name, such land
> shall be presumed, without regard to the number of lots covered by
> each individual offering, as being offered for sale or lease as part
> of a common promotional plan.

15 U.S.C. § 1701(4).  Under ILSA section 1702(b)(1), developers are not required to file a

Statement of Record or a Property Record if the subdivision contains fewer than one hundred

lots to which ILSA would otherwise apply.

In the Third Circuit, exemptions from remedial statutes such as ILSA are to be narrowly

construed.  Markowitz v. Ne. Land Co., 906 F.2d 100, 105 (3d Cir. 1990).   Congress has given

the Secretary for Housing and Urban Development the authority and responsibility for

administering ILSA.  Id. at 104 (citing 15 U.S.C.A. § 1715(a)).  "When Congress vests an

agency such as the Department of Housing and Urban Development with the power to administer

a statute, the Supreme Court requires us to defer to the agency's reasonable construction of the

statute."  Id. at 105 (citing Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S.

837, 843–45 (1984)).

HUD Guidelines provide a detailed definition for "common promotional plan" which

states that "[o]ther characteristics that are evaluated in determining whether or not a common

promotional plan exists include, but are not limited to:  a 10% or greater common ownership;

same or similar name or identity; common sales agents; common sales facilities; common

advertising; and common inventory."  61 Fed. Reg. 13596-01, 13602 (Guidelines for Exemptions

Available Under the Interstate Land Sales Full Disclosure Act, 24 C.F.R. Ch. X, Part 1710, App.

A (1989)).  The HUD Guidelines note that "[t]he presence of one or more of the characteristics

does not necessarily denote a common promotional plan.  Conversely, the absence of a

characteristic does not demonstrate that there is no common promotional plan."  Id.  The

Guidelines also state that "[t]wo essential elements of a common promotional plan are a thread

of common ownership or developers acting in concert.  However, common ownership alone

would not constitute a common promotional plan."  Id.  According to the HUD Guidelines, "[i]f

there is common ownership or if developers are acting in concert, and there is common

advertising, sales agents or sales office, a common promotional plan is presumed to exist."  Id.,

see also U.S. v. Dacus, 634 F.2d 441, 444 (9th Cir. 1980) (finding that "the mere fact that

appellants sold lots from a number of variously named developments does not avoid the Act's

requirements") (citing Wiggins v. Lynn, 406 F. Supp. 338 (E.D. Tex. 1975) (finding that a

similar sales scheme for eighteen variously named developments constituted sales of a

"subdivision" for purposes of ILSA)).

        In the present case, Plaintiffs have asserted that lots in three Willow Creek developments

were sold as part of a common promotional plan which contains more than one hundred lots:

Hopewell Ridge (twenty-nine lots), Lamborn Hunt (seventy-two lots), and Lexington Pointe.[7]

The Hopewell Ridge lots are in Oxford, Pennsylvania, and the Lamborn Hunt lots are in West

---

[7] Plaintiffs have not included the number of lots in Lexington Pointe in the facts set forth in the
Amended Complaint.  For purposes of deciding the Keystone and Willow Creek Defendants'
Motion to Dismiss, the Court will presume it contains at least one lot, totaling at least 102 lots
between Hopewell Ridge, Lamborn Hunt, and Lexington Pointe.

Grove, Pennsylvania.[8]  As Hopewell Ridge and Lamborn Hunt are located in two different

towns, they are not contiguous.  They are not known, designated, or advertised as a common unit

or using a common name.  In the absence of those characteristics, the statutory presumption of a

common promotional plan, as set forth in ILSA section 1701(4), is not triggered by the facts

alleged in the Amended Complaint.

Nonetheless, Plaintiffs have alleged facts that show a common promotional plan exists

according to the HUD Guidelines definition.  Specifically, Plaintiffs claim that some Hopewell

Ridge buyers "were routinely taken to other nearby communities such as Lamborn Hunt,"

"[o]ther buyers were also directed to another near-by community . . . known as Lexington

Pointe," and "[a]ll but a few of the actual closings for the Plaintiffs took place at Lamborn

Hunt."  (Am. Compl. ¶ 144.)  Plaintiffs' argument is supported by other federal courts' decisions

regarding the intersection of the one hundred lot exemption and the definition of common

promotional plan.  In Paniaguas v. Aldon Cos., Inc., the district court found that summary

judgment for the defendants was precluded where the plaintiffs argued that several subdivisions

constituted a common promotional plan because the defendants showed parcels from a

development called Northwoods to potential purchasers for a development called Fieldstone

Crossing, used the Northwoods model home as a base of operations for Fieldstone Crossing

sales, and provided the plaintiffs with a copy of the Northwoods Restrictive Covenants as a

frame of reference for what to expect in Fieldstone Crossing.  No. Civ.A. 04-468, 2006 WL

2568210, at *12 (N.D. Ind. Sept. 5, 2005).  The plaintiffs in that case had also alleged that the

defendants told them the Fieldstone Crossing subdivision "would have the same quality of

construction and external harmony of design as exhibited [in the defendant's] Northwoods

_____

[8] Plaintiffs describe Lexington Pointe as "another near-by community developed by Keystone."
(Am. Compl. ¶ 144.)  The name of the municipality in which Lexington Pointe is located is not
provided.

subdivision." Id. at *10.  Likewise, in Pigott v. Sanibel Development, LLC, the district court found that the defendant's and its listing agent's similar treatment of all unsold units in its condominium inventory for purposes of marketing and promotion to the public and to investors, where there was common ownership, a common name, and common inventory, was a factor supporting partial summary judgment for the plaintiffs' claim that there was a common promotional plan.  576 F. Supp. 2d 1258, 1277–78 (S.D. Ala. 2008) (relying in part on the HUD Guidelines regarding "common promotional plan" to find that the one hundred lot exemption did not apply).  Finally, in United States v. Dacus, the Ninth Circuit found that a common promotional plan within the meaning of ILSA existed where "[t]he lands were known collectively by one or two common names, were offered in aggregate newspaper advertisements, and were sold through one sales office by salesmen who had authority to sell parcels from any of the various developments and who would frequently show parcels from a number of developments to a single purchaser."  634 F.2d at 443–44 (upholding conviction where defendant marketed lots in eight developments through one main office and advertised all eight individually-named developments under the entity names "Pahrump" or "Nevada Land Builders, Inc.").

Here, Plaintiffs have alleged facts that support the existence of a common promotional plan which includes Hopewell Ridge, Lamborn Hunt, and Lexington Pointe.  First, the Keystone and Willow Creek Defendants were marketing and selling lots in all three of the developments that Plaintiffs claim are part of a common promotional plan under the umbrella of Keystone Homes, Inc.  Second, some purchasers of Hopewell Ridge lots were taken to Lamborn Hunt to view that development, while others were shown lots at Lexington Pointe.  Third, several of the Plaintiffs closed on their Hopewell Ridge lots at Lamborn Hunt.  Plaintiffs' factual allegations

regarding the Defendants' treatment of Hopewell Ridge fit within the HUD Guidelines definition of "common promotional plan" and preclude dismissal of their statutory ILSA claim under the one hundred lot exemption.

The Court will permit Plaintiffs to seek discovery regarding the "common promotional plan" aspect of their statutory ILSA claims against the Keystone and Willow Creek Defendants, and the Defendants' motion to dismiss Plaintiffs' section 1703(a)(1)(A) claims is denied.  See Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 731, 734 (11th Cir. 1982) (reversing dismissal due to lack of subject matter jurisdiction and remanding for discovery where the plaintiffs asserted that two condominiums were offered in aggregate advertisements, and where units were sold through common sales offices by salesmen with authority to sell units from either condominium or who would show units from both condominiums to a single purchaser).  Having denied the Keystone and Willow Creek Defendants' Motion to Dismiss Plaintiffs' federal law claims under ILSA, the Court will now consider the Defendants' Motion to Dismiss Plaintiffs' state law claims.

## B. **Fraud in the Inducement**

### 1. **Failure to Comply with Federal Rule of Civil Procedure 9(b)**

The Hostetter Defendants next argue that Plaintiffs' claim of fraud in the inducement does not comply with Federal Rule of Civil Procedure 9(b), is barred by the gist of the action doctrine, and fails to allege facts sufficient to establish fraud by the Hostetters.  The Keystone and Willow Creek Defendants also argue that Plaintiffs' claim of fraud in the inducement does not comply with Rule 9(b).  The Court will address each argument individually.

Under Pennsylvania law, the elements of fraud in the inducement are:

     (1) a representation;

     (2) which is material to the transaction at hand;

> (3) made falsely, with knowledge of its falsity or recklessness as to
> whether it is true or false;
>
> (4) with the intent of misleading another into relying on it;
>
> (5) justifiable reliance on the misrepresentation; and
>
> (6) the resulting injury was proximately caused by the reliance.

Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co., 700 F. Supp. 2d 720, 727 (W.D. Pa.

2010) (citing Eigen v. Textron Lycoming Reciprocating Engine Div., 874 A.2d 1179, 1185 (Pa.

Super. Ct. 2005)).

Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of

a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  "In order to satisfy Rule 9(b),

plaintiffs must plead with particularity the circumstances of the alleged fraud in order to place

the defendants on notice of the precise misconduct with which they are charged, and to safeguard

defendants against spurious charges of immoral and fraudulent behavior."  Lum, 361 F.3d at

223–24.  "Plaintiffs may satisfy this requirement by pleading the 'date, place or time' of the

fraud, or through 'alternative means of injecting precision and some measure of substantiation

into their allegations of fraud."  Id. (quoting Seville Indus. Mach. Corp. v. Southmost Mach.

Corp., 742 F.2d 786, 791 (3d Cir. 1984) (noting that focusing exclusively on the particularity

language in Rule 9(b) is "too narrow an approach"), cert denied, 469 U.S. 1211 (1985)); see also

Spitzer v. Abdelhak, No. Civ.A. 98-6475, 1999 WL 1204352, at *5 (E.D. Pa. Dec. 15, 1999)

("The rule is satisfied where some precision and some measure of substantiation is present in the

pleadings.") (citing Killian v. McCulloch, 850 F. Supp. 1239, 1254 (E.D. Pa. 1994).  Allegations

of "date, place, or time" fulfill the purpose of Rule 9, "but nothing in the rule requires them."

Spitzer, 1999 WL at *5 (citing Seville Indus. Mach. Corp., 742 F.2d at 791).  Finally,

"[p]laintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation."  Lum, 361 F.3d at 224.

Plaintiffs allege that the Defendants knowingly made material misrepresentations and omissions by (1) not disclosing the elevated nitrate levels in the drinking water at Hopewell Ridge; (2) telling Plaintiffs the reverse osmosis faucets were "free upgrades" without disclosing their true function; (3) telling Plaintiffs that the septic systems were "state of the art," "green," and "no-maintenance;" (4) leading Plaintiffs to believe they would have public sewer access; (5) not disclosing that Plaintiffs would be responsible for the costs of connecting to public sewer; (6) failing to disclose that the deeds would come from Willow Creek when the Public Offering Statement provided that the Hostetters and Keystone would be the sellers; and (7) by not disclosing that the Defendants planned to turn HOA responsibilities over to Plaintiffs in the face of significant unfunded liability related to the need to connect the Hopewell Ridge lots to public sewer and water.  (Am. Compl. ¶ 147.)  Plaintiffs alleged that those misrepresentations and material omissions were intended to mislead Plaintiffs, with the expectation and result that Plaintiffs would rely on them and enter into agreements to purchase their properties and continue closing on them.  (Id. at ¶ 148.)  Finally, Plaintiffs alleged that they justifiably relied on the Defendants' misrepresentations and omissions when they purchased their homes, causing Plaintiffs damage through the decreased value of their homes and the responsibility to pay for connecting their homes to public sewer and water.  (Id. at ¶¶ 48, 123, 127–28, 13–33, 149.)  After reviewing the specific allegations in the Amended Complaint, the Court finds that the Hostetter Defendants are sufficiently aware of the documents, circumstances, and properties at issue in the Amended Complaint such that the purpose of Rule 9(b) is satisfied.  The Court also

finds that Plaintiffs have sufficiently stated a claim for fraud in the inducement, and accordingly the Hostetter Defendants' motion to dismiss that claim is denied.

The Keystone and Willow Creek Defendants argue that Plaintiffs' fraud in the inducement claim does not comply with Rule 9(b) because it does not specify the allegations of fraud with respect to each Defendant individually.  However, the Plaintiffs incorporated by reference all paragraphs of the Amended Complaint with their fraud in the inducement claim, and as discussed above, Plaintiffs' ILSA claim distinguishes which Defendants are alleged to have made which misstatements or omissions.  As Plaintiffs have set forth facts supporting all the elements of a fraud in the inducement claim, they have adequately pled fraud in the inducement with respect to the Keystone and Willow Creek Defendants.

### 2.   Gist of the Action Doctrine

The Hostetter Defendants next argue that Plaintiffs' fraud in the inducement claim is barred by the gist of the action doctrine because their tort claims regarding the EnviroServers arise out of a contractual relationship with Willow Creek and Keystone.

The gist of the action doctrine bars tort claims under the following circumstances: (1) where the claim arises solely from a contract between the parties; (2) where the duties allegedly breached were created by a contract; (3) where liability is derived from a contract; or (4) where the success of the tort claim is dependent on the terms of a contract.  Oldcastle Precast, Inc. v. VPMC, Ltd., Civ.A. 12-6270, 2013 WL 1952090, at *7 (E.D. Pa. May 13, 2013) reconsideration denied, Civ.A. 12-6270, 2013 WL 3865112 (E.D. Pa. July 26, 2013) (citing Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 582 (Pa.Super.2003)).[9]

---

[9] Although the Pennsylvania Supreme Court has not explicitly adopted the gist of the action doctrine, both the Pennsylvania Superior Court and multiple United States District Courts have predicted that it will.  Woods v. ERA Med LLC, No. Civ.A.08-2495, 2009 WL 141854, at *6 n.11 (E.D. Pa. Jan. 21, 2009) (citing cases).

By their own admission, the Hostetter Defendants did not have a contract with Plaintiffs, because Plaintiffs purchased their homes from the Keystone and Willow Creek Defendants and not from the Hostetters.  Accordingly the gist of the action doctrine will not apply to bar Plaintiffs' fraudulent inducement claim.  See Centimark Corp. v. Pegnato & Pegnato Roof Mgmt., Inc., No. Civ.A. 05-708, 2008 WL 1995305, at *13 (E.D.Pa. May 6, 2008) (finding that the defendants were unable to invoke the gist of the action doctrine to foreclose litigation of a conversion claim against them because they were not parties to the contract); Levert v. Philadelphia Int'l Records, No. Civ.A. 04–1489, 2005 WL 2271862, at *3 (E.D.Pa. Sept.16, 2005) (finding that the gist of the action doctrine did not apply to the defendant because he was not a party to any contract and there was no agreement between the parties).

### 3.   Failure to Allege Facts Sufficient to Establish Fraud

Finally, the Hostetters argue that the Amended Complaint fails to allege facts sufficient to establish fraud because Plaintiffs did not allege any direct communication between themselves and the Hostetters, that any of them actually read or relied on the Public Offering Statement, or that the Hostetters were the Declarants at the time Plaintiffs purchased their homes.  They go on to reason that if any of the Plaintiffs were misled, it was by the sellers, builders, contractors, and consultants responsible for the construction and installation of the EnviroServers, and by the Homeowner's Association, rather than by the Hostetter Defendants.

As discussed above, Plaintiffs adequately pled fraud in the inducement.  First, Plaintiffs have asserted that they relied on allegedly fraudulent statements in the POS in which the Hostetters are described as the Declarants.  The Hostetters assert they had no involvement in drafting the POS, but whether the Hostetters actually authored that document is a matter for discovery.  Second, as discussed above, Plaintiffs have alleged justifiable reliance on the

statements in the Public Offering Statement in connection with their decisions to purchase homes in Hopewell Ridge.  Third, whether the Hostetter Defendants retained declarant control at the time that Plaintiffs purchased their lots from Keystone and Willow Creek is irrelevant to whether the POS contained fraudulent or misleading statements which Plaintiffs relied on in deciding to purchase their lots.  Fourth, whether Plaintiffs were misled by the other parties listed in the Hostetter Defendants' Motion to Dismiss the fraud claim does not mean that Plaintiffs were not also misled by the Hostetter Defendants.  Moreover, the details the Hostetter Defendants argue are missing from Plaintiffs' claim are not required elements of a cause of action for fraud in the inducement.

Accordingly, and for the reasons described above, the Court declines to dismiss Plaintiffs' fraudulent inducement claim against the Hostetter Defendants and the Keystone and Willow Creek Defendants.

**C.  Negligent Misrepresentation**

The Hostetter Defendants next seek dismissal of Plaintiffs' negligent misrepresentation claim because it lacks sufficient specificity as required to comply with Rule 9(b), is precluded by the gist of the action doctrine,[10] and fails to allege facts sufficient to establish the elements of negligent misrepresentation because Plaintiffs do not allege that the Hostetters are in the business of supplying information for the guidance of others.  Both the Hostetter Defendants and the Keystone and Willow Creek Defendants argue that Plaintiffs' claim does not comply with Rule 9(b).

Under Pennsylvania law, the tort of negligent misrepresentation is comprised of four elements:

---

[10] As discussed above, the gist of the action doctrine cannot bar Plaintiffs' claim for negligent misrepresentation against the Hostetter Defendants, because Plaintiffs did not enter into a contract with them.

> (1) a misrepresentation of material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in an injury to a party acting in justifiable reliance on the misrepresentation.

See Bortz v. Noon, 729 A.2d 555, 561 (Pa. 1999) (citing Gibbs v. Ernst, 647 A.2d 882, 890 (Pa. 1994) (citing Restatement (Second) of Torts § 552)); see also First Sealord Sur. v. Durkin & Devries Ins. Agency, 918 F. Supp. 2d 362, 373 (E.D. Pa. 2013) (reciting the elements of negligent misrepresentation under Pennsylvania law) (citing Smith v. Lincoln Ben. Life Co., 395 F. App'x 821, 824 (3d Cir. 2010) (citing Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270, (Pa. 2005))).  "The misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words."  Id. at 277.  As with any negligence action, "there must be an existence of a duty owed by one party to another."  Id.  The Pennsylvania Supreme Court has adopted section 552 of the Restatement of Torts, but in doing so noted that "such adoption would not supplant the common law version of the Pennsylvania tort, but rather, would serve to clarify the elements of the tort as they apply to those in the business of supplying information to others for pecuniary gain."  See Excavation Tech. Inc. v. Columbia Gas Co. of Pa., 985 A.2d 840, 843 (Pa. 2009) (discussing the Pennsylvania Supreme Court's adoption of section 552 for use in certain circumstances) (citing Bilt-Rite, 866 A.2d at 280).

Taking the facts set forth in the Amended Complaint as true, the Hostetter Defendants made material misrepresentations and omissions about their properties in the POS, under circumstances where the Hostetters knew or should have known their statements were false or misleading, intending to induce Plaintiffs into buying lots in Hopewell Ridge, and resulting in injury to Plaintiffs due to reduced home values and the costs Plaintiffs face in connecting their

lots to public sewer and water.  Specifically, as alleged in the Amended Complaint, the

Hostetters were aware of the elevated nitrate levels on the lots in Hopewell Ridge, but signed the

POS which stated that there was no contamination on the property.  Plaintiffs also alleged that

the POS provided for public sewer connections as a backup to the experimental septic systems,

but that no connections were made.  Plaintiffs further alleged that they have suffered damages

because of the reduced value of their homes and the lack of public sewer and water access, as

well as added maintenance costs related to obtaining functioning septic systems.  Plaintiffs have

therefore sufficiently stated a claim for negligent misrepresentation against the Hostetter

Defendants.

The Hostetter Defendants' argument that the negligent misrepresentation claim fails

because the Hostetters are not in the business of supplying information for the guidance of others

is misplaced.  Pennsylvania law does not require the defendant in a negligent misrepresentation

action to be in the business of supplying information for the guidance of others—it only requires

courts to apply section 552 of the Restatement of Torts if the defendant is such a person.  <u>Bilt-</u>

<u>Rite</u>, 866 A.2d at 287.  As the Declarants for the Hopewell Ridge POS,[11] the Hostetter

Defendants supplied allegedly false and misleading information that influenced Plaintiffs'

decisions to purchase lots in Hopewell Ridge and which has caused Plaintiffs' damages.  As

such, the Court finds Plaintiffs have pled sufficient facts such that dismissal of their negligent

misrepresentation claim is precluded.

Both the Hostetter Defendants and the Keystone and Willow Creek Defendants argue that

the negligent misrepresentation claim does not comply with Rule 9(b) because Plaintiffs do not

articulate the time at which the misrepresentations were made, which defendants or agents made

---

[11] As previously stated, the disputed authorship of the Public Offering Statement is a matter for
discovery.

them, or to which Plaintiffs the statements were made.  Allegations of "date, place, or time" can fulfill the purpose of Rule 9, but are not required.  See Spitzer, 1999 WL at *5 (citing Seville Indus. Mach. Corp., 742 F.2d at 791).  As the Court previously stated, the allegations in the Amended Complaint are sufficient to alert all of the defendants to "the precise misconduct with which they are charged" because it distinguishes the allegations which are against all the Defendants from those allegations which are only against the Keystone and Willow Creek Defendants.  See Lum, 361 F.3d at 223–24.  It is not fatal to Plaintiffs' claims that they do not indicate which individual wrote or uttered which fraudulent statement or representation with respect to which plaintiff—it  would be impossible for them "to delineate which Defendant was responsible for which Act prior to discovery."  See Killian, 850 F. Supp. at 1254 (citing Petro-Tech, Inc. v. W. Co. of N. Am., 824 F.2d 1349, 1362 (3d Cir. 1987)).  After reviewing the specific allegations in the Amended Complaint, the Court finds that the Hostetter Defendants and the Keystone and Willow Creek Defendants are sufficiently aware of the documents, circumstances, and properties at issue in the Amended Complaint such that the purpose of Rule 9(b) is satisfied with respect to the negligent misrepresentation claim.

Having found that Plaintiffs' claim satisfies Rule 9(b) and that Plaintiffs have adequately pled negligent misrepresentation against the Hostetter Defendants and the Keystone and Willow Creek Defendants, the Court will deny the Defendants' Motions to Dismiss Plaintiffs' negligent misrepresentation claim.

**D. Pennsylvania Uniform Planned Community Act**

The Pennsylvania Uniform Planned Community Act ("UPCA") contains numerous disclosure and document recording requirements for planned community developments in Pennsylvania.  68 Pa. Cons. Stat. Ann. §§ 5101–5414.  Planned communities are created by

declaration, and if a "declarant or any other person subject to [the UPCA] violates any provision of [the UPCA] or any provisions of the declaration or bylaws, any person or class of persons adversely affected by the violation has a claim for appropriate relief." Id. §§ 5201, 5412. Willful violations can lead to an award of punitive damages. Id. § 5412. The UPCA also sets forth requirements for the content of public offering statements and requires declarants to "promptly amend the public offering statement to report any material change in the information required" under UPCA. Id. § 5402(a), (c).

UPCA purchaser protections, however, do not apply to units in a planned community in some instances. Specifically at issue in this case is where the protections are modified or waived by agreement of the purchaser of a unit intended for nonresidential use at the time of sale by the declarant, or by agreement of purchasers of units in a planned community who are or intend to be in the business of buying and selling planned community units, provided that a purchaser of a unit intended for residential use at the time of sale by the declarant may not modify or waive the provisions of section 5411 (concerning warranties against structural defects) with regard to the unit and any common elements. See § 5401(a)(1).

### 1. **Hostetter Defendants**

The Hostetter Defendants argue that they cannot be liable under the UPCA because Plaintiffs did not buy their homes from the Hostetters and because UPCA protections do not apply to the Hostetters' sale of the lots to Keystone.[12]

---

[12] The Hostetter Defendants also argue that Plaintiffs have improperly recast their breach of warranty claim as a statutory claim under the UPCA, and have failed to allege facts sufficient to establish a breach of warranty. UPCA section 5411 provides that declarants shall warrant against structural defects in units and controlled facilities, where controlled facilities are defined in section 5103 as "[a]ny real estate within a planned community, whether or not a part of a unit, that is not a common facility but is maintained, improved, repaired, replaced, regulated, managed, insured or controlled by the association." Plaintiffs' UPCA claim is not precluded by the existence of their breach of express warranty claim, and the two claims are not mutually

The Hostetter Defendants' assertion that at the time they sold the Hopewell Ridge lots to Keystone, they were vacant and "therefore not susceptible of residential use" and "therefore intended, by definition, 'for nonresidential use at the time of sale,'" is based on a misreading of section 5401(a).  (Hostetter Mem. Supp. Mot. Dismiss at 27.)  It is disingenuous for the Hostetter Defendants to claim that the lots they sold to a company that develops planned residential communities were somehow not intended for residential use because they did not yet have homes constructed on them.  Furthermore, the Public Offering Statement provides that "[i]n Hopewell Ridge, Units are intended for residential use and will be restricted to those uses permitted under the local Zoning Ordinance . . . ."  (Am. Compl., Ex. E at 2.)  Taking the facts asserted in Plaintiffs' Amended Complaint as true, the Hostetter Defendants intended for the land now comprising Hopewell Ridge to be subdivided into twenty-nine lots on which homes would be built, hired a company to prepare a plan proposing a twenty-nine lot subdivision where each lot would have a four bedroom home, and sold and conveyed the land to Keystone and Willow Creek for that purpose.  (Am. Compl. ¶¶ 37–38.)  There can be no doubt that the lots were intended for residential use at the time the Hostetter Defendants sold the Hopewell Ridge lots to Keystone and Willow Creek.  Accordingly, the "nonresidential use" exception in section 5401(a) does not apply to the lots in Hopewell Ridge.[13]

---

exclusive.  The Court will not dismiss Plaintiffs' UPCA claim solely because Plaintiffs have also asserted a breach of express warranty claim.

[13] The Hostetter Defendants also argue that the purchaser protections do not apply because the Hostetters sold the Hopewell Ridge lots to Keystone, who is in the business of buying and selling planned community units, and did not sell the lots to Plaintiffs, and that they are therefore exempt from the UPCA under section 5401(a).  That argument fails to take into account the complete language of section 5401(a)(1), which states that where a declarant sells lots which are intended for residential use at the time of the sale to a purchaser in the business of buying and selling property, purchaser protections can only be waived by agreement, and even then cannot be waived with respect to the protections in section 5411 concerning warranties against structural defects in the units or any common elements.  Plaintiffs correctly contend that a fact-based

Distinct from the level of the Hostetter Defendants' involvement in the actual sale of Hopewell Ridge lots to Plaintiffs is their status as Declarants in the Public Offering Statement. Section 5412 of the UPCA provides that "[i]f a declarant or any other person subject to this subpart violates any provision of this subpart or any provisions of the declaration or bylaws," any adversely affected person has a claim for appropriate relief, where willful violations may result in an award of punitive damages.  The Hostetter Defendants argue that they were not required to file a public offering statement and that they are not the Declarants in the Hopewell Ridge POS. Nonetheless, there is a Public Offering Statement for Hopewell Ridge which bears the Hostetters' names as the Declarants as well as their notarized signatures.  Accordingly, section 5412 applies to the Hostetter Defendants and they are subject to the UPCA's requirements and prohibitions.  Having found that the UPCA applies to the Hostetter Defendants, the Court will examine the sufficiency of Plaintiffs' UPCA claim.

Plaintiffs allege the following UPCA violations with respect to the Public Offering Statement:  (1) failure to disclose a description of any liens, defects, or encumbrances on or affecting title to the planned community; (2) failure to disclose the expected charges for connecting Plaintiffs' homes to public sewers; (3) failure to include a statement containing a declaration as to the present condition of all structural components and major utility installations in the subject property, including the dates of construction, installation, and major repairs, and the expected useful life of each item, together with the estimated cost of replacement, in violation of section 5402(a)(22); (4) failure to include a statement of all governmental approvals

---

assessment of whether that clause of the section 5401(a)(1) exemption applies to the Hostetter Defendants' sale of the lots to Keystone is more appropriate after discovery and following further development of a factual record regarding any agreement the Hostetters may have had with Keystone to waive certain purchaser protections.  In any event, the Hostetter Defendants are subject to the provisions of the UPCA due to their Declarant status and the alleged misrepresentations contained in the notarized Public Offering Statement they signed.

and permits required for the use and occupancy of Hopewell Ridge, indicating the name and expiration date of each such approval or permit that has been obtained, and, as to any approvals or permits that have not been obtained, a statement indicating when each such approval or permit is expected to be obtained and the person responsible for the expense of obtaining each such approval or permit, in violation of section 5402(a)(25); (5) failure to include a statement regarding any outstanding and uncured notices of violations of governmental requirements, and if there are any such notices, a description of the alleged violation as required by section 5402(a)(26); (6) failure to disclose elevated nitrate levels in the Public Offering Statement in violation of section 5402(a)(20) and (27); (7) failure to disclose in the Public Offering Statement the declarant's obligation to complete public sewer facilities, the time necessary for completion, the source of funding for completion, and the responsibility of the unit owners and the HOA for maintenance, repair, improvement, administration, and regulation of those facilities, in violation of section 5402(a)(29); and (8) failure of the Declarant to warrant against defects in structures of any unit or common element or any other portion of a unit or common element constructed, modified, altered, or improved on by or on behalf of a declarant which reduce the stability or safety of the structure below accepted standards or restrict the normal intended use of the structure and require repair, renovation, restoration or replacement.  (Am. Compl. ¶¶ 154–61.) Plaintiffs alleged facts and identified omissions in the Public Offering Statement which support the claimed violations of UPCA sections 5402(a)(20), (22), (25), (26), (27), and (29) regarding the Public Offering Statement and Declarant obligations.  Plaintiffs also attached a copy of the signed and notarized Public Offering Statement to the Amended Complaint.  Having reviewed the Public Offering Statement and the Amended Complaint, the Court finds that Plaintiffs have

sufficiently stated a claim against the Hostetter Defendants for violations of section 5412 of the UPCA, and the Hostetter Defendants Motion to Dismiss that claim is denied.

### 2.  **Keystone and Willow Creek Defendants**

The Keystone and Willow Creek Defendants argue that they are not liable for any alleged UPCA violations because they are not the Declarant for Hopewell Ridge, and Plaintiffs have not alleged that they are the Declarant.  Application of the UPCA, however, is not limited to declarants, as section 5412 creates liability for violations by a declarant "or any other person" subject to the UPCA provisions.  The Court will therefore consider the sufficiency of Plaintiffs' UPCA claim against the Keystone and Willow Creek Defendants.

UPCA section 5303(a) governs the powers and fiduciary status of the executive board members and officers of homeowner's associations and provides that "[i]n the performance of their duties, the officers and members of the executive board shall stand in a fiduciary relation to the association and shall perform their duties . . . in good faith; in a manner they reasonably believe to be in the best interest of the association; and with care, including reasonable inquiry, skill and diligence as a person of ordinary prudence would use under similar circumstances."  68 Pa. Cons. Stat. § 5303(a).  The Hopewell Ridge Public Offering Statement provides that non-homeowner members of the Executive Board act as representatives of the declarants.  Several Keystone officers and employees served on the Executive Board of the Hopewell Ridge HOA and accepted Declarant control from the Hostetter Defendants at a meeting on October 10, 2011. The Keystone employees who were Hopewell Ridge HOA Executive Board members were, therefore, subject to the provisions of UPCA during the time in which the alleged UPCA violations occurred, and thus the Keystone and Willow Creek Defendants are capable of liability under the UPCA through the actions of the HOA Executive Board.

Plaintiffs further allege that the Keystone and Willow Creek Defendants were aware of the problems with high nitrate levels and the EnviroServers, and that, together with the Hostetter Defendants, they withheld that information from Plaintiffs in violation of the UPCA.  The HOA Executive Board members, who were Keystone employees, failed to disclose that material information to Plaintiffs in spite of their fiduciary duty to Plaintiffs.  That failure breached the fiduciary duty owed to Plaintiffs and violated UPCA section 5303(a).  Accordingly, Plaintiffs have stated a UPCA claim against the Keystone and Willow Creek Defendants, and the Keystone and Willow Creek Defendants' Motion to Dismiss Plaintiffs' UPCA claim is denied.

**E.  <u>Breach of Fiduciary Duty</u>**

Plaintiffs contend that the Hopewell Ridge HOA Executive Board members had a fiduciary obligation to Plaintiffs to ensure that Plaintiffs' properties were connected to public water and sewer and to ensure that proper funds were available to do so.  Plaintiffs also allege that the Executive Board members knew that the EnviroServers were not performing adequately and that "[t]he Defendants" caused the Executive Board to resign their positions, leaving Plaintiffs without viable sewage and water facilities and without the financial means to resolve the situation.  (Pls.' Resp. Opp'n Hostetter Mot. to Dismiss at 30.)

In Pennsylvania, the elements of a breach of fiduciary duty claim are:  (1) the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) the plaintiff suffered an injury; and (3) the agent's failure to act solely for the plaintiff's benefit was a real factor in bringing about plaintiff's injury.  <u>See</u> <u>Meyers v. Sudfeld</u>, No. Civ.A. 05-2970, 2007 WL 419182, at *10 (E.D. Pa. Feb. 2, 2007) (quoting <u>McDermott v. Party City Corp.</u>, 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998)).  In Pennsylvania, the standard by which courts review the actions of an executive board of a

homeowners' association is whether they acted "in good faith; in a manner they reasonably believe to be in the best interests of the association; and with care, including reasonable inquiry, skill and diligence as a person of ordinary prudence would use under similar circumstances." See Burgoyne v. Pinecrest Cmty. Ass'n, 924 A.2d 675, 683 (Pa. Super. Ct. 2007) (citing 68 Pa. Con. Stat. § 5303).

The Keystone and Willow Creek Defendants argue that Plaintiffs' claim for breach of fiduciary duty fails to state a cause of action because it is only three paragraphs long and is speculative. The Hostetters argue that Plaintiffs' breach of fiduciary duty claim is barred by the gist of the action doctrine[14] and fails because Plaintiffs do not allege facts sufficient to establish that the Hostetter Defendants owed Plaintiffs a fiduciary duty. Specifically, the Hostetter Defendants argue that they were never members of the Executive Board, that the Executive Board members named in the Amended Complaint are not, and were not, their employees, and that there is no reason to believe the Executive Board members acted as the Hostetters' agents.

Plaintiffs respond by arguing that, as asserted in the Amended Complaint, the Hostetter Defendants entered into an agreement for the management of the HOA with the Keystone and Willow Creek Defendants, and that the Public Offering Statement provides that non-homeowner members of the Executive Board act as representatives of the declarants (the Hostetters). Therefore, Plaintiffs argue, the Keystone employees were acting on behalf of Keystone to fulfill Keystone's agreement with the Hostetters, and thus represented all the Defendants. The Court agrees.

The three elements of an agency relationship are "the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of

---

[14] As set forth above, because the Hostetter Defendants did not have contracts with Plaintiffs, the gist of the action doctrine does not apply and will not bar Plaintiffs' tort claims.

the parties that the principal is to be in control of the undertaking." eToll, Inc. v. Elias/Savion

Adver., Inc., 811 A.2d 10, 21 (Pa. Super. Ct. 2002) (quoting Scott v. Purcell, 415 A.2d 56, 60

(Pa. 1980) (quoting Restatement (Second) of Agency § 1, cmt. b (1958))).

      Although the Hostetter Defendants have argued that they were not involved in drafting

the POS, they are nonetheless named as Declarants in it and, according to its terms, were

represented by the Keystone employees who served on the HOA Executive Board.  The POS

provides that Hopewell Ridge "will be managed by an Executive Board of between three and

nine members, all of whom must be Unit Owners **or representatives of the Declarant or**

**entities that own Units**" and that "[i]nitially, **members of the Executive Board will be**

**appointed by the Declarant**."  (Am. Compl., Ex. E at 7, 12 (emphasis added).)  According to

the POS, the Hostetter Defendants were responsible for appointing the HOA Executive Board

members and were represented by them, thereby manifesting their desire that those board

members should act for them.  The Keystone employees who served on the Executive Board

accepted their appointments, presumably with an understanding that the Declarants, the Hostetter

Defendants, were in control of the HOA until such time that the Executive Board accepted

declarant control from the Hostetters.  On the basis of the terms of the POS and the facts alleged

in the Amended Complaint, the Court finds that an agency relationship existed between the

Hostetter Defendants and the Hopewell Ridge HOA Executive Board.  Therefore, any breach of

fiduciary duty the Board members owed to Plaintiffs was a breach of fiduciary duty by agents of

the Hostetter Defendants.

      Having found an agency relationship existed between the Hostetter Defendants and the

HOA Executive Board members, the Court now considers whether the Executive Board

members breached the fiduciary duty owed to Plaintiffs.  The Public Offering Statement

describes the Hopewell Ridge Homeowners Association as an organization that "will be incorporated as a Pennsylvania nonprofit corporation," whose bylaws provide that "its purpose is to administer the Planned community, arrange for management of the Planned community, and to establish the means of making and collecting assessments against the Units to fund maintenance of the Hopewell Ridge Home Owners Association and the Common Elements." (Am. Compl., Ex. E at 6.)  It further states that Hopewell Ridge "will be managed by an Executive Board of between three and nine members, all of whom must be Unit Owners or representatives of the Declarant or entities that own Units."  (Id. at 7 (emphasis added).)

Plaintiffs allege that the Executive Board was comprised of Keystone employees who had knowledge of facts regarding the nitrate concentrations, the functionality of the EnviroServers, and the absence of a connection to public water and sewer at Hopewell Ridge, and who resigned their positions without informing Plaintiffs of those facts or taking the necessary steps to ensure that Plaintiffs would have the required backup connections to public sewer and water, or a means to pay for those connections.  Plaintiffs also allege that the Keystone employees who served on the Hopewell Ridge HOA Executive Board had knowledge during their term as board members that the EnviroServers were not performing according to the Sewage Permit.  Plaintiffs claim the Executive Board had a fiduciary duty to Plaintiffs to ensure that Plaintiffs' properties were connected to public water and sewer, and to ensure that proper funds were available to accomplish that task.  Finally, Plaintiffs allege that the Defendants, despite knowing that the EnviroServers were not performing in accordance with the requirements in the Sewage Permit, caused the Executive Board members to resign their positions, thereby leaving Plaintiffs without viable sewage and water facilities and without the financial means to rectify that situation.

On the basis of the facts alleged in the Amended Complaint, the Executive Board Members of the Hopewell HOA had a fiduciary duty to Plaintiffs as Unit owners, and breached that duty by not disclosing material information to Plaintiffs and by not taking steps to ensure that Hopewell Ridge would be connected to public water and sewer.  The Executive Board members either negligently or intentionally did not act in good faith or solely for Plaintiffs benefit by failing to disclose material information about the Hopewell Ridge lots to Plaintiffs. Plaintiffs were injured by those failures because they have suffered a diminution in the value of their homes, suffered the loss of marketability of their homes, incurred expenses related to the high levels of nitrates in their water which include additional maintenance costs related to their septic systems, and are faced with incurring additional expenses to obtain functioning septic systems and avail themselves of potable drinking water.  The HOA Executive Board members' failure to act for Plaintiffs' benefit with regard to those matters was a real factor in bringing about Plaintiffs' injuries.  As the Amended Complaint adequately alleges that the HOA Executive Board members were agents of both the Hostetter Defendants and the Keystone and Willow Creek Defendants, the Motions to Dismiss that claim are denied.

### F.  **Breach of Express Warranty**

In Pennsylvania, a seller creates an express warranty by "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain."  13 Pa. Cons. Stat. § 2313(a) (1980).  Formal words or a specific intent to create an express warranty are not necessary—the seller need not use the words "warrant" or "guarantee" or have a specific intention to make a warranty—but a mere opinion or commendation of the goods does not create a warranty.  13 Pa. Cons. Stat. § 2313(b) (1980).  A court must first determine whether the seller's statement "constitutes an affirmation of fact or

promise," and if it does, determine whether the statement was "part of the basis of the bargain." Versatile Metals, Inc. v. Union Corp., 693 F. Supp. 1563, 1567 (E.D. Pa. 1988) (quoting 13 Pa. Cons. Stat. § 2313(a) (1980)).  If those two conditions are met, an express warranty exists.  Id. (citing Sessa v. Rigle, 427 F. Supp. 760, 765 (E.D. Pa. 1977), aff'd 568 F.2d 770 (3d Cir. 1978)).

The Hostetter Defendants and the Keystone and Willow Creek Defendants each raise different arguments as to why Plaintiffs' breach of warranty claim fails.

### 1.  **Hostetter Defendants**

The Hostetters argue that Plaintiffs' claim for breach of express warranty fails against them because the EnviroServers were specifically excluded from the express warranty in the POS.[15]  Plaintiffs respond by arguing that it is not the failure of the EnviroServers that constitutes the breach of an express warranty, but rather the failure to fulfill the promise made in the POS that public water would be available as a back-up until the sewer facilities were re-designated from experimental status to regular status.

In the Amended Complaint, Plaintiffs allege that "[t]he Defendants expressly warranted that the sanitary sewer facilities would be free from structural defects" and that "the homes had a safe and adequate supply of drinking water," but that the water supply to their homes demonstrated excessive levels of nitrates and that the sanitary sewer facilities were defective and never operated properly.  (Am. Compl. ¶¶ 169–71.)  The Hopewell Ridge POS, attached to the

---

[15] The Hostetter Defendants also argue that Plaintiffs failed to allege that the Hostetters drafted or signed the Public Offering Statement in which express warranties appear.  As the Court has previously stated, the authorship of the Public Offering Statement and the extent of, or lack of, the Hostetters' involvement in creating that document are matters for discovery.

The Hostetter Defendants also argue that Plaintiffs have not alleged facts sufficient to establish that the Hostetter Defendants were obligated by law to draft a Public Offering Statement, but the Hostetters' obligation to draft a Public Offering Statement, or the lack thereof, is not dispositive of the issue of whether the Hostetters actually are the Declarants of the Hopewell Ridge Public Offering Statement.

Amended Complaint as Exhibit E, contains the following statement:  "Public water will be available to all the lots within the Community.  The Declarant initially received an 'experimental' permit for the enviro server systems, and a requirement thereunder is that public sewer facilities be available as a backup system.  Until such time as the sewer permit is re-designated from experimental to regular public sewer will be available as a backup system to the lots containing enviro server systems."  (Am. Compl., Ex. E at 1.)  That statement is "an affirmation of fact or promise" that Plaintiffs' lots would have public sewer access until such time as the sewer facilities were re-designated as regular rather than experimental, a statement on which Plaintiffs allegedly relied in making their decisions to purchase lots in Hopewell Ridge, and accordingly is "part of the basis of the bargain."  See Versatile Metals, 693 F. Supp. at 1568 (finding that a statement in an asset purchase agreement that warranted the land at issue was free of contamination was an express warranty).  As the Hostetters are the Declarants of the document creating the express warranty, and as Plaintiffs' lots are not currently connected to public sewers as a backup system, Plaintiffs have stated a claim for a breach of the express warranty contained in the POS.  Accordingly, the Hostetter Defendants' Motion to Dismiss the breach of express warranty claim is denied.

### 2.  Keystone and Willow Creek Defendants

The Keystone and Willow Creek Defendants argue that Plaintiffs' claim for breach of express warranty fails to state a cause of action against them and does not comply with Federal Rule of Civil Procedure 9(f)[16] because the claim does not set forth the terms of the warranty or

---

[16] Rule 9(f) provides that "[a]n allegation of time or place is material when testing the sufficiency of a pleading."  Fed. R. Civ. P. 9(f).  As with Rule 9(b), allegations of time and place are not required, but rather are material if alleged.  See, e.g., Jairett v. First Montauk Secs. Corp., 203 F.R.D. 181 (E.D. Pa. 2001) (explaining that "rule 9(f) does not require specificity in pleading time and place, but provides only that when specific allegations are made, they are material.") (citing Borrell v. Weinstein Supply Corp., No. Civ.A.94-2857, 1994 WL 530102 at *3 n.4 (E.D.

identify the Defendants who allegedly provided the warranties, and does not identify the specific conduct that violated the terms of the warranties, which Defendant allegedly committed the violation, or the dates of each alleged breach.

Plaintiffs allege that "Keystone and Willow Creek, LLC expressly warranted in its agreement that it would construct Plaintiffs' respective properties in a good, substantial and workmanlike manner" but that the sanitary sewer facilities were defective and never properly operated, and that therefore the Keystone and Willow Creek Defendants breached "said express warranty." (Am. Compl. ¶¶ 173–75.) Plaintiffs further assert in the Amended Complaint that "Willow Creek and Keystone began entering into agreements with the Plaintiffs for the construction and sale of new homes in Hopewell Ridge," (Am. Compl. ¶ 96), but they do not provide the Court with the language of any express warranties within those agreements. The Court presumes that Plaintiffs' reference to Keystone and Willow Creek having warranted in "its agreement" does not refer to language in the Public Offering Statement, which was described in the Amended Complaint and attached as an exhibit to the Amended Complaint. Without any indication from Plaintiffs regarding the contents of the alleged express warranty contained within Plaintiffs' agreements with Keystone and Willow Creek, the Court cannot determine whether those Defendants breached an express warranty. Accordingly, the Court will grant the Keystone and Willow Creek Defendants' Motion to Dismiss Plaintiffs' express warranty claim against them.

---

Pa. Sept. 27, 1994) (citing James Wm. Moore, Moore's Federal Practice vol. 2, § 9.07[1], 9-41 (3d ed., LEXIS 2001))); see also Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure vol. 5A, § 1309, 696 ("It should be made perfectly clear that Rule 9(f) does not require the pleader to set out specific allegations of time and place; it merely states the significance of these allegations when they actually are interposed.").

### G.  **Breach of Implied Warranty of Habitability and Workmanship**[17]

In Pennsylvania, the implied warranty of habitability "is implied by law into every contract for the sale of a new home" and is "triggered by a contract for a sale of a newly built home."  See Fetzer v. Vishneski, 582 A.2d 23, 25 (Pa. Super. 1990), appeal denied, 593 A.2d 842 (1991); Conway v. Cutler Grp., Inc., 57 A.3d 155, 159 (Pa. Super. Ct. 2012), appeal granted, 77 A.3d 1257 (Pa. 2013).  A "builder-vendor impliedly warrants that the home he has built and is selling is constructed in a reasonably workmanlike manner and that it is fit for the purpose intended—habitation."  Elderkin v. Gaster, 288 A.2d 771, 773, 777 (Pa. 1972) (finding that the builder-vendor breached the implied warranty of habitability where the plaintiffs' home did not have a potable drinking water supply due to excessive nitrate concentrations and discussing other courts' "natural application" of the implied warranty to cases where the site selected for the home was of an "unsuitable nature").

"The implied warranty of habitability is 'not created by representations of the builder-vendor but rather is implied in law and as such exists independently of any representations of a builder-vendor."  Conway, 57 A.3d at 159 (citing Tyus v. Resta, 476 A.2d 427, 433 (Pa. Super. 1984)).  "The implied warranty of habitability exists even in the absence of a contract between the builder and the homeowner" and "covers defects which would not be apparent to the ordinary purchaser as a result of a reasonable inspection."  Id. (citing Tyus, 476 A.2d at 433).  "[G]iven the important consumer protection afforded by the implied warranties . . . such warranties may be limited or disclaimed only by clear and unambiguous language in a written contract between

---

[17] The Hostetters argue that because they were not the builders or sellers of the Plaintiffs' homes, they owed Plaintiffs no implied warranty of habitability or workmanship.  Plaintiffs do not oppose the Hostetter Defendants' Motion to Dismiss Count Seven of the Amended Complaint, as Plaintiffs assert that they did not intend to assert claims of breach of the implied warranties of habitability and workmanship against the Hostetter Defendants.  Accordingly, the Court will dismiss Count Seven of the Amended Complaint as against the Hostetter Defendants.

the builder-vendor and the home purchaser." Tyus, 476 A.2d at 432. "[C]ontractual language purportedly creating an express restriction or exclusion of an implied warranty must be strictly construed against the builder-vendor." Id. In order to give proper notice, disclaimer language "must refer to its effect on specifically designated, potential latent defects." Id.

Plaintiffs alleged that the Keystone and Willow Creek Defendants impliedly warranted that the properties would be functional, habitable, and of reasonable workmanship, and that the properties would be constructed in a good and workmanlike manner. (Am. Compl. ¶ 178.) Nonetheless, they assert that the sewer facilities were defective and never properly operated, and that the failure of a residence to have a properly functioning sewage system that is in compliance with all laws and permits is a violation of the implied warranty of habitability such that Keystone and Willow Creek breached that implied warranty. (Id. ¶¶ 178–82.) Plaintiffs have also alleged that there is no readily available public sewer system for Hopewell Ridge, their homes depend on well water, there is no connection to public water, and the drinking water at Hopewell Ridge contains excessive levels of nitrates.

The Keystone and Willow Creek Defendants respond that Plaintiffs' claim for breach of the implied warranties of habitability and workmanship fails to state a cause of action against them and does not comply with Rule 9(f) for the same reasons they provided regarding the alleged breach of express warranty, and because Plaintiffs do not discuss whether the express warranties affected the implied warranties.

The Keystone and Willow Creek Defendants' arguments are misplaced. Plaintiffs are not required to allege dates, places, and times of any representations in order to state a claim for breach of the implied warranties of habitability and workmanship because they are "implied in law" and exist independently of any such representations. See Conway, 57 A.3d at 159. The

implied warranties can only be disclaimed under certain circumstances and by using certain

precise language which the Keystone and Willow Creek Defendants have not argued was present

in the agreements they had with Plaintiffs.  The disclaimer in the Public Offering Statement

states that:

> EXCEPT AS SET FORTH ABOVE, THE UNITS AND THE
> COMMON ELEMENTS ARE TO BE SOLD, OR, WITH
> RESPECT TO THE COMMON ELEMENTS, TRANSFERRED
> BY THE DECLARANT, 'AS IS,' WITHOUT WARRANTY OR
> REPRESENTATION OF ANY KIND, EXPRESS OR IMPLIED,
> INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF
> MERCHANTABILITY, FITNESS FOR A PARTICULAR
> PURPOSE, OR HABITABILITY . . .

(Am. Compl., Ex. E at 14.)  This language does not constitute a valid waiver of the implied

warranty of habitability with respect to the sewage and water systems at Hopewell Ridge,

because it "fails to explain with particularity its purported effect on implied warranties."  Tyus,

476 A.2d at 434.  That Plaintiffs have not explained away this disclaimer is not fatal to their

claim.  See Elderkin, 288 A.2d at 777 (noting that "it goes without saying that a potable water

supply is essential to any functional living unit; without drinkable water, the house cannot be

used for the purpose intended" and finding that the implied warranty of habitability was

breached).

     Having reviewed the allegations in the Amended Complaint, the Court finds that

Plaintiffs have sufficiently stated a claim for breach of the implied warranties of habitability and

workmanship against the Keystone and Willow Creek Defendants, and the Defendants' Motion

to Dismiss that claim is denied.

### H.  Pennsylvania Unfair Trade Practices and Consumer Protection Law

     The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")

provides a private right of action for purchasers of goods or services affected by "[u]nfair

methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by [the subclauses of 73 Pa. Con. Stat. § 201-2(4)]."  73 Pa. Con. Stat. § 201-3; 73 Pa. Con. Stat. § 201-9.2.  At issue in the present case is section 201-2(4)(xxi), which provides that "unfair or deceptive acts or practices" include "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding" other than the specific conduct described in the preceding subclauses.  73 Pa. Con. Stat. 201-2(4)(xxi).

To state a private cause of action under the UTPCPL, a plaintiff must allege that he has suffered "an ascertainable loss *as a result of* the defendant's prohibited action," which means the plaintiff must allege reliance on the defendant's conduct which induced the plaintiff to make a purchase for personal or household purposes.  See Weinberg v. Sun Co., Inc., 777 A.2d 442,446 (Pa. 2001) (emphasis in original); see also Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004) ("To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance.") (citing Weinberg).  Evidence of justifiable reliance "must go beyond 'simply a causal connection between the misrepresentation and the harm,' and a plaintiff must 'show that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the misrepresentation.'"  Slemmer v. McGlaughlin Spray Foam Insulation, Inc., 955 F. Supp. 2d 452, 461 (E.D. Pa. 2013) (quoting Hunt v. U.S. Tobacco Co., 538 F.3d 217, 222 n.4 (3d Cir. 2008)).  "A plaintiff need not be in direct privity with a defendant to bring an action under the UTPCPL for the defendant's wrongful conduct," Johnson v. MetLife Bank, N.A., 883 F. Supp. 2d 542, 547–48 (E.D. Pa. 2012), so long as the plaintiff has purchased the product at issue.  Slemmer, 955 F. Supp. 2d at 461 (citing Balderston v. Medtronic Sofamor Danek, Inc., 285 F.3d 238, 240 (3d Cir. 2002)).  In keeping with the "remedial focus of

the Pa. U.T.P.C.P.L. on eradicating fraudulent business practices," Pennsylvania courts extend

liability under section 201-9.2 "to those in privity, those specifically intended to rely upon the

fraudulent conduct, and those whose reasonable reliance was especially foreseeable." <u>Valley</u>

<u>Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.</u>, 574 A.2d 641, 647 (Pa. Super. 1990).

### 1. **Hostetter Defendants**

The Hostetter Defendants argue that Plaintiffs do not meet the definition of a "purchaser"

and that Plaintiffs were not deceived by or ever had any contact with the Hostetters, and

accordingly cannot assert UTPCPL claims against them.  Pennsylvania courts, however, do not

require strict privity between the purchaser and the party being sued under the UTPCPL.  <u>See</u>

<u>Valley Forge</u>, 574 A.2d at 647.  Plaintiffs are persons whose reliance was especially foreseeable

because they were prospective purchasers of lots the Hostetter Defendants were involved in

developing for residential use.  As prospective purchasers, Plaintiffs were specifically intended

to rely upon the representations in the POS.  Accordingly, even though Plaintiffs did not

purchase lots directly from the Hostetters, they are "purchasers" for purposes of the UTPCPL

and they can assert UTPCPL claims against the Hostetter Defendants.

Even if the Hostetter Defendants are correct that Plaintiffs never had any direct contact

with them, Plaintiffs alleged that they relied on statements in the POS regarding the septic

systems, access to public water and sewer, and an absence of outstanding or uncured notices of

violations of governmental requirements.  Plaintiffs further alleged that they relied on those

statements, which are claimed to be false, misleading, or inaccurate, to their detriment, and that

they suffered damages as a result.  Specifically, Plaintiffs claim that they relied on the

Defendants' statements representing the availability of public sewers and water, when access

was not feasible or available without an expenditure of over $10,000,000; statements regarding

the EnviroServers as being "state of the art," "green," and "no-maintenance" when they were not; the terms of written warranties; the Defendants' fraudulent and deceptive conduct with respect to who would act as the seller; the environmental condition of the properties; the availability of public water and sewer; and the value, functionality, habitability, and true condition of the properties and homes.  The Hostetters are the Declarants in the POS, which contains the allegedly fraudulent statements.  Accordingly, Plaintiffs have sufficiently alleged that they were deceived by the Hostetter Defendants in violation of UTPCPL section 201-2(4)(v), (vii), (xiv), and (xxi), and the motion to dismiss the UTPCPL claim against the Hostetter Defendants is denied.

### 2.  **Keystone and Willow Creek Defendants**

The Keystone and Willow Creek Defendants argue that Plaintiffs' UTPCPL claim fails to state a cause of action because it is a formulaic recitation of the elements of a private cause of action under UTPCPL and couches legal conclusions as factual allegations.  Taking Plaintiffs' factual allegations as true for the purposes of this Motion to Dismiss, the Court finds that Plaintiffs have sufficiently stated a cause of action under UTPCPL based on the Keystone and Willow Creek Defendants' fraudulent and deceptive conduct.  Plaintiffs have alleged that they relied on the Defendants' representations regarding the availability of public water and sewers, as well as the Defendants' descriptions of the EnviroServers and the environmental condition of the property in Hopewell Ridge.[18]  Plaintiffs alleged that those representations were false, misleading, or inaccurate and induced Plaintiffs to rely on them to their detriment when they purchased lots and homes from Keystone and Willow Creek.  Finally, Plaintiffs pleaded facts

---

[18] Plaintiffs also alleged that the Defendants failed to comply with the terms of a written warranty, but do not provide any additional information regarding the warranty or its contents. (Am. Compl. ¶ 187.)  That portion of Plaintiffs' UTPCPL claim fails as insufficient to state a cause of action.  As the other bases asserted for Plaintiffs' UTPCPL claim are sufficiently pled, however, the Court will not dismiss that cause of action.

showing damages with respect to the value of their homes and the costs associated with connecting them to public sewers in light of the nitrate contamination on the lots.  Accordingly, the Keystone and Willow Creek Defendants' motion to dismiss the Plaintiffs' UPTCPL claim is denied.

## I.  **Civil Conspiracy**

Plaintiffs' last state law claim alleges a civil conspiracy.  To state a cause of action for civil conspiracy, a plaintiff must demonstrate: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage."  Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) (citation and internal quotations omitted).  An "'actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor.'"  Levin v. Upper Makefield Twp., 90 F. App'x 653, 667 (3d Cir. 2004) (citing In re Orthopedic Bone Screw Prods. Liab. Litig., 193 F.3d 781, 789 (3d Cir. 1999)).  Ultimately, "only a finding that the underlying tort has occurred will support a claim for civil conspiracy."  Alpart v. Gen. Land Partners, Inc., 574 F. Supp. 2d 491, 506 (E.D. Pa. 2008) (quotation omitted).

Importantly, "[p]roof of malice, *i.e.,* an intent to injure, is essential in proof of a conspiracy."  Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979).  "Malice requires . . . that the *sole* purpose of the conspiracy was to injure the plaintiff," and that this intent was without justification.  Doltz v. Harris & Assoc., 280 F. Supp. 2d 377, 389 (E.D. Pa. 2003) (emphasis added).  As malice can only be found when the *sole* purpose of the conspiracy is to injure the plaintiff, a showing that a person acted for professional reasons, and not solely to

injure the plaintiff, negates a finding of malice.  See Bro-Tech Corp. v. Thermax, Inc., 651 F.

Supp. 2d 378, 419 (E.D. Pa. 2009); Thompson Coal Co., 412 A.2d at 472 (noting that the intent

to injure must be without justification, which cannot exist when an act is merely done "with the

intention of causing temporal harm, without reference to one's own lawful gain, or the lawful

enjoyment of one's own rights") (quoting Rosenblum v. Rosenblum, 181 A. 583, 585 (Pa.

1935)).  This necessary proposition is negated by a showing that the acts alleged were done for

professional or business benefit.  See Bro-Tech, 651 F. Supp. 2d at 419.

 Plaintiffs' civil conspiracy claim incorporates all the allegations of the Amended

Complaint and further alleges that the Defendants acted with a common purpose to:  (1)

misrepresent that the EnviroServers were "state of the art," "green," and "no-maintenance;" (2)

misrepresent that the reverse osmosis systems were water filter upgrades; (3) not disclose

elevated nitrate levels in the drinking water; (4) not disclose the lack of funds for a backup

system for public sewers; (5) misrepresent the availability of public sewers; and (6) with

knowledge of the foregoing, turn over declarant control to the Hopewell Ridge HOA Executive

Board members, who then resigned.  Plaintiffs claim the Defendants' actions were malicious

and/or were performed with the intent to injure them, and that they suffered damages as

described in the Amended Complaint.

 The Hostetter Defendants argue that Plaintiffs cannot assert a civil conspiracy claim

against them because Plaintiffs have not alleged facts sufficient to support their claims of fraud

and negligent misrepresentation.  The Keystone and Willow Creek Defendants assert that

Plaintiffs' civil conspiracy claim does not comply with Rule 9(f) and does not clearly show what

conduct by which Defendant creates liability for a conspiracy.

The Court found previously that Plaintiffs have sufficiently stated claims for fraud and negligent misrepresentation.  However, in addition to being based on an underlying tort claim, a successful claim for civil conspiracy also requires that "the *sole* purpose of the conspiracy is to injure the plaintiff," not just that the plaintiff was injured.  See <u>Bro-Tech</u>, 651 F. Supp. 2d at 419. It is on this point that Plaintiffs' claim for civil conspiracy fails.  The fact that it may have been necessary to deceive Plaintiffs, or to otherwise willfully and maliciously commit various torts against them, in order to sell lots in Hopewell Ridge without making Plaintiffs aware of the elevated nitrate levels on the properties, does not equate to an allegation that the conspiracy was formed with the sole intent to injure Plaintiffs.  See <u>Spitzer v. Abdelhak</u>, No. Civ.A. 98–6475, 1999 WL 1204352, at *9 (E.D. Pa. Dec. 15, 1999) ("As Plaintiffs have stated elsewhere, the Defendants' purpose of the conspiracy was to benefit themselves personally and professionally. The fact that it may have been necessary to deceive Plaintiffs in order to carry out their scheme in no way indicates that they acted with malice solely to injure Plaintiffs.").  At no point in the Amended Complaint do Plaintiffs expressly state that the sole purpose of the conspiracy was to injure them.  Accordingly, the Court will grant the Motion to Dismiss Plaintiffs' civil conspiracy claim as to both the Hostetter Defendants and the Keystone and Willow Creek Defendants.

### J.   **The Keystone and Willow Creek Defendants' Motion for a More Definite Statement**

The Keystone and Willow Creek Defendants have also moved for an Order under Federal Rule of Civil Procedure 12(e) requiring Plaintiffs to file a more definite statement as to the date on which each Plaintiff entered into a contract to purchase a home from the Defendants and "as to the dates that each Plaintiff became aware of the issues alleged in that Complaint" with respect to each of the counts in the Amended Complaint.

Rule 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response . . . [t]he motion . . . must point out the defects complained of and the details desired."  Fed. R. Civ. P. 12(e).  A Rule 12(e) motion is "appropriate when the pleading is 'so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself].'"  <u>Sun Co., Inc. (R&M) v. Badger Design & Constructors, Inc.</u>, 939 F. Supp. 365, 368 (E.D. Pa. 1996) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, Civil 2d, § 1376 (1990) (citing <u>Hicks v. Arthur</u>, 843 F. Supp. 949, 954 (E.D. Pa. 1994))).  "The class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small—the pleading must be sufficiently intelligible for the court to be able to make out one or more potentially viable legal theories on which the claimant might proceed."  <u>Id.</u> (quoting 5A Wright & Miller § 1376 at 577).  "The basis for granting such a motion is unintelligibility, not lack of detail."  <u>Id.</u> (quoting <u>Wood & Locker, Inc. v. Doran and Assocs.</u>, 708 F. Supp. 684, 691 (W.D. Pa. 1989)).  "[I]f the granting of a Rule 12(e) motion increases the time and effort to refine the pleadings without circumscribing the scope of discovery or defining the issues, then such a motion is not appropriate."  <u>Hicks</u>, 843 F. Supp. at 959 (quoting 5A Wright & Miller § 1376 at 578).

In the present case, Plaintiffs' allegations are not so vague, ambiguous, or unintelligible that the Keystone and Willow Creek Defendants cannot frame a responsive pleading.  Plaintiffs have submitted a complaint containing over one hundred paragraphs concerning the parties' identities and the factual background for their claims, and attached numerous exhibits to the Complaint, including the Public Offering Statement which contains many of the statements Plaintiffs rely on in making their claims.  The information the Keystone and Willow Creek

Defendants request is "within the defendant[s'] own knowledge" through its records.  See

Wheeler v. U.S. Postal Serv., 120 F.R.D. 487, 488 (M.D. Pa. 1987).  The general time period in

which Plaintiffs became aware of the sewage and water issues on their properties is specified in

the Amended Complaint, and more specific information regarding that time frame can be

obtained through discovery.  See id.; see also Steinberg v. Guardian Life Ins. Co. of America,

486 F. Supp. 122, 123 (E.D. Pa. 1980).  Accordingly, the Keystone and Willow Creek

Defendants' Motion for a More Definite Statement is denied.

**IV.    CONCLUSION**

In light of the foregoing, the Court finds that the allegations of the Amended Complaint

are sufficient to state a claim for liability under the Interstate Land Sales and Full Disclosure Act,

the Pennsylvania Uniform Planned Community Act, and the Pennsylvania Unfair Trade Practice

and Consumer Protection Law, as well as for fraud in the inducement, negligent

misrepresentation, and breach of fiduciary duty as against all Defendants; for breach of express

warranty as against the Hostetter Defendants; and for breach of the implied warranty of

habitability and workmanship as against the Keystone and Willow Creek Defendants.  As such,

the Defendants' Motions to Dismiss under Rule 12(b)(6) and Rule 12(b)(1), shall be denied as to

those claims.  The Keystone and Willow Creek Defendants' Motion for a More Definite

Statement pursuant to Rule 12(e) is also denied.  The Defendants' Motions to Dismiss are

granted with respect to Plaintiffs' claim for civil conspiracy as against all Defendants, Plaintiffs'

claim for breach of express warranty as against the Keystone and Willow Creek Defendants, and

Plaintiffs' claim for breach of the implied warranty of habitability as against the Hostetter

Defendants.

An appropriate Order follows.